## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GAVIN GALJOUR** | **CIVIL ACTION** |
| **versus** | **NO. 13-5878** |
| **N. BURL CAIN, WARDEN** | **SECTION: "H" (1)** |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Gavin Galjour, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana.  On November 30, 2006, he was convicted under Louisiana law of

armed robbery and possession of a firearm by a convicted felon.[1]  On January 4, 2007, he was sentenced on the former conviction to a term of twenty years imprisonment and on the latter conviction to a term of fifteen years imprisonment.  It was ordered that those sentences be served consecutively and without benefit of probation, parole, or suspension of sentence.[2]  On May 1, 2007, he was found to be a fourth offender and was resentenced as such on the armed robbery conviction to a term of ninety-nine years imprisonment without benefit of parole, probation, or suspension of sentence.[3]  On September 23, 2008, the Louisiana First Circuit Court of Appeal affirmed his convictions and sentences.[4]  The Louisiana Supreme Court then denied his related writ application on September 25, 2009.[5]

On June 28, 2010, petitioner, through counsel, filed an application for post-conviction relief with the state district court.[6]  That application was denied on December 30, 2010.[7]  Petitioner's

---

[1] State Rec., Vol. IV of XI, transcript of November 30, 2006, p. 169.

[2] State Rec., Vol. V of XI, transcript of January 4, 2007.

[3] State Rec., Vol. VIII of XI, transcript of May 1, 2007.

[4] State v. Galjour, No. 2007 KA 1347, 2008 WL 4332509 (La. App. 1st Cir. Sept. 23, 2008); State Rec., Vol. V of XI.

[5] State ex rel. Galjour v. State, 18 So.3d 90 (La. 2009) (No. 2008-KH-2730); State Rec., Vol. V of XI.

[6] State Rec., Vol. V of XI.

[7] State Rec., Vol. V of XI, Judgment and Reasons for Judgment dated December 30, 2010.

related writ applications were likewise denied by the Louisiana First Circuit Court of Appeal on May 23, 2011,[8] and by the Louisiana Supreme Court on March 30, 2012.[9]

On May 10, 2012, petitioner filed the instant federal application seeking *habeas corpus* relief.[10]

## I.  Timeliness

The state argues that the federal application is untimely.[11]  For the following reasons, the Court declines to recommend dismissal on that basis.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") generally requires that a petitioner bring his Section 2254 claims within one (1) year of the date on which his underlying criminal judgment becomes "final."[12]  On that point, the United States Fifth Circuit Court of Appeals has explained:

> The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  When a habeas petitioner has pursued relief

---

[8] State v. Galjour, No. 2011 KW 0232 (La. App. 1st Cir. May 23, 2011); State Rec., Vol. V of XI.

[9] State *ex rel.* Galjour v. State, 85 So.3d 108 (La. 2012) (No. 2011-KH-1426); State Rec., Vol. V of XI.

[10] Rec. Doc. 1.

[11] Rec. Doc. 6.

[12] Although 28 U.S.C. § 2244(d)(1) has alternative provisions providing for other events which can trigger the commencement of the statute of limitations, those alternative provisions are not applicable in the instant case.

> on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court.  Roberts v. Cockrell, 319 F.3d 690, 693 (5th Cir. 2003).

Butler v. Cain, 533 F.3d 314, 317 (5th Cir. 2008).

As noted, the Louisiana Supreme Court denied petitioner's writ application on direct review on September 25, 2009. As a result, for AEDPA purposes, his state criminal judgment became final, and his federal limitations period therefore commenced, on December 24, 2009. See id. at 317-18.  That limitations period then expired one year later, unless the deadline was extended through tolling.

Regarding the statute of limitations, the AEDPA expressly provides:  "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).  Therefore, after one hundred eighty-five (185) days elapsed in the instant case, the federal limitations period was tolled when petitioner filed his post-conviction application with the state district court on June 28, 2010.  Tolling then continued uninterrupted for the duration of the post-conviction proceedings, so long as he sought supervisory review in a timely manner.  Grillette v. Warden, Winn Correctional Center, 372 F.3d 765, 769-71 (5th Cir. 2004).  The state does not challenge the timeliness of petitioner's related appellate writ

applications.  Accordingly, the Court finds that tolling continued until the Louisiana Supreme Court denied relief on March 30, 2012.[13]

At that point, petitioner had one hundred eighty (180) days of the federal limitations period remaining.  Accordingly, he had until September 26, 2012, to file his federal application.

The state notes that the Clerk of this Court stamped petitioner's federal application as "Tendered for Filing" on September 6, 2013.  That date is, of course, well after the limitations period expired.  However, for federal limitations purposes, "[a] prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court."  Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003).  The first page of petitioner's federal application bears a stamp indicating that it was received in the prison's Legal Programs Department on May 10, 2012, as well as another stamp indicating that it was scanned and emailed to this Court on that same date in accordance with the Court's electronic filing agreement with the prison.[14]  Accordingly, the undersigned finds that petitioner's federal application was "filed" as of May 10, 2012, when it was given to prison officials for transmission to this Court, and it was therefore timely filed.

---

[13]   State ex rel. Galjour v. State, 85 So.3d 108 (La. 2012) (No. 2011-KH-1426); State Rec., Vol. V of XI.  A petitioner receives no additional tolling credit for the period during which he could have sought review by the United States Supreme Court with respect to the denial of post-conviction relief.  Lawrence v. Florida, 549 U.S. 327, 332 (2007); Ott v. Johnson, 192 F.3d 510, 512-13 (5th Cir. 1999).

[14]   For reasons that are unclear, that filing was never received by the Court; however, there is no reason to believe that petitioner was at fault.

Because petitioner's federal application was timely filed, and because the state concedes that his claims are exhausted,[15] the claims will be addressed on the merits.

## II.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary

---

[15]  Rec. Doc. 6, p. 6.

to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary

to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning."  <u>Bell</u>, 535

U.S. at 694.

        Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals

has explained:

> A state court decision is contrary to clearly established precedent if
> the state court applies a rule that contradicts the governing law set
> forth in the [United States] Supreme Court's cases.  A state-court
> decision will also be contrary to clearly established precedent if the
> state court confronts a set of facts that are materially
> indistinguishable from a decision of the [United States] Supreme
> Court and nevertheless arrives at a result different from [United
> States] Supreme Court precedent.

<u>Wooten v. Thaler</u>, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets,

and footnotes omitted).

        Regarding the "unreasonable application" clause, the United States Supreme Court

has explained:

> [A] state-court decision can involve an "unreasonable application" of
> this Court's clearly established precedent in two ways.  First, a
> state-court decision involves an unreasonable application of this
> Court's precedent if the state court identifies the correct governing
> legal rule from this Court's cases but unreasonably applies it to the
> facts of the particular state prisoner's case.  Second, a state-court
> decision also involves an unreasonable application of this Court's
> precedent if the state court either unreasonably extends a legal
> principle from our precedent to a new context where it should not
> apply or unreasonably refuses to extend that principle to a new
> context where it should apply.

Williams v. Taylor, 529 U.S. 362, 407 (2000).   The Supreme Court has noted that the focus of this

inquiry "is on whether the state court's application of clearly established federal law is objectively

unreasonable, and we stressed in Williams that an unreasonable application is different from an

incorrect one."   Bell, 535 U.S. at 694; see also Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011)

("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of

the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

   While the AEDPA standards of review are strict and narrow, they are purposely so.

As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary
> conclusion was unreasonable.
>   If this standard is difficult to meet, that is because it was
> meant to be.  As amended by AEDPA, § 2254(d) stops short of
> imposing a complete bar on federal court relitigation of claims
> already rejected in state proceedings.  It preserves authority to issue
> the writ in cases where there is *no possibility* fairminded jurists could
> disagree that the state court's decision conflicts with this Court's
> precedents.  It goes no farther.  Section 2254(d) reflects the view that
> habeas corpus is a guard against *extreme malfunctions* in the state
> criminal justice systems, *not a substitute for ordinary error*
> *correction through appeal.  As a condition for obtaining habeas*
> *corpus from a federal court, a state prisoner must show that the state*
> *court's ruling on the claim being presented in federal court was so*
> *lacking in justification that there was an error well understood and*
> *comprehended in existing law beyond any possibility for fairminded*
> *disagreement.*

Harrington v. Richter, 131 S.Ct. 770, 786-87 (2011) (citations omitted; emphasis added); see also

Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts – from

using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state

courts.").

<u>III.  Facts</u>

On direct appeal, the Louisiana First Circuit Court of Appeal summarized the facts

of this case as follows:

> On February 18, 2006, Laramie Duet contacted the Lafourche Parish Sheriff's Office and advised that he had been robbed at gunpoint two days earlier.  He identified his assailant as the defendant, Gavin Galjour.  Duet explained that he was riding down Jerica Street in Galliano, Louisiana, when the defendant's girlfriend, Audrey Cheramie, and her friend, Shantell Taylor, stopped him and invited him into Cheramie's trailer.  According to Duet, once they were inside the trailer, the defendant emerged from an adjoining room, pointed a gun at Duet's eye and demanded his money.  Because he and the defendant were friends, Duet initially did not take the matter seriously, believing it to be a joke.  However, once the defendant cocked the weapon and threatened to shoot him, Duet realized he was actually being robbed.  According to Duet, the defendant pushed him onto the sofa and removed approximately $5,500.00 from his pocket.  The defendant also took Duet's wallet and cellular telephone.
>
> In response to the robbery report, Lafourche Parish Sheriff's officials reported to Cheramie's trailer to investigate.  Shantell Taylor confirmed the crime and said she had witnessed it.  Taylor advised the officials that the defendant was inside the trailer armed with a handgun.  The defendant did not come out of the trailer immediately.  Approximately thirty minutes elapsed before he surrendered to the police.  A handgun was found concealed inside a stuffed teddy bear inside the trailer.
>
> At the defendant's trial, Darren Charpentier testified that the handgun recovered from Cheramie's trailer belonged to him and was purchased in December 2005.  Charpentier explained that a few days after he purchased the gun, he left the gun in the defendant's vehicle.  Despite several requests, the defendant refused to return the gun to Charpentier.  Charpentier claimed he never possessed the gun again.[16]

---

[16] <u>State v. Galjour</u>, No. 2007 KA 1347, 2008 WL 4332509, at *1 (La. App. 1st Cir. Sept. 23, 2008); State Rec., Vol. V of XI.

IV.  Plaintiff's Claims

A.  Denial of Recess

Plaintiff's first claim is that his rights were violated when the trial judge refused to grant a recess to secure the presence of a defense witness.  On direct appeal, the Louisiana First Circuit Court of Appeal denied that claim, holding:

> [T]he defendant argues that the trial court erred in refusing to allow additional time for him to produce a crucial witness for whom he had requested a subpoena, but which was never served by the Sheriff's Office.  The defendant contends Craig Griffin was a material witness whose testimony would have served to impeach the testimony of Darrin Charpentier and would likely have changed the result of the case.  He also asserts that the defense exercised due diligence in attempting to procure the presence of this witness at trial.
>
> The right to compulsory process is the right to demand subpoenas for witnesses and the right to have those subpoenas served.  State v. Latin, 412 So.2d 1357, 1361 (La. 1982).  This right is embodied in both the federal and state constitutions and in this state's statutory law.  U.S. Const. amend. VI; La. Const. art. 1, § 16; La. Code Crim. P. art. 731.  However, this right does not exist in a vacuum, and a defendant's inability to obtain service of requested subpoenas will not be grounds for reversal of his conviction or new trial in each and every case.  In order for defendant to show prejudicial error, he must demonstrate the testimony the witness might give which would be favorable to the defendant and which would indicate the possibility of a different result if the witness were to testify.  See State v. Green, 448 So.2d 782, 787 (La.App.2d Cir.1984).
>
> Louisiana Code of Criminal Procedure article 708 provides, "A continuance is the postponement of a scheduled trial or hearing, and shall not be granted after the trial or hearing has commenced.  A recess is a temporary adjournment of a trial or hearing that occurs after a trial or hearing has commenced."  A motion for recess is evaluated by the same standards as a motion for a continuance.  The decision to grant a recess is within the sound discretion of the trial judge and will not be reversed in the absence of a showing of an abuse of that discretion.  State v. Brown, 95-0755, p. 9 (La.App. 1st Cir. 6/28/96), 677 So.2d 1057, 1065.

Louisiana Code of Criminal Procedure article 709 provides:

A motion for a continuance based upon the absence of a witness must state:

(1) Facts to which the absent witness is expected to testify, showing the materiality of the testimony and the necessity for the presence of the witness at the trial;

(2) Facts and circumstances showing a probability that the witness will be available at the time to which the trial is deferred; and

(3) Facts showing due diligence used in an effort to procure attendance of the witness.

In the instant case, the defendant argues the trial court abused its discretion in failing to grant his motion for a recess of the trial to ensure the presence of Craig Griffin, a key witness. He argues that Griffin's testimony was both relevant and material. He further notes that the motion for a recess was requested on November 30, 2006, and the witness would have been available to testify on December 17, 2006; thus, the delay of the trial would have been less than one month. In response, the State asserts the trial court did not abuse its discretion in denying the defendant's motion. The State notes that the proffered testimony would not have proven that the defendant did not rob the victim or that he did not possess the firearm in question. Consequently, the State argues that the testimony was not material. The State further notes that the defense failed to produce any evidence that Griffin would have actually been available to testify on December 17, 2006, and the defense failed to exercise due diligence in requesting service of the subpoena upon Griffin at the rehabilitation center.

On November 29, 2006, the day trial commenced in this matter, counsel for the defense advised the court that the subpoena issued to ensure Griffin's presence at the defendant's trial was never served. Counsel explained that although the subpoena was timely requested, it was returned unserved due to the fact that Griffin was in a rehabilitation center outside the state. Despite noting that the defense intended to call Griffin as an impeachment witness, counsel did not request a continuance of the trial at this point. Instead,

- 11 -

counsel stated, "If the State, if that witness testifies consistently with what we are hoping he says, then maybe Mr. Griffin will not be necessary."

Later, during the trial, counsel for the defendant noted that the defense wished to call Griffin to testify. Based upon Griffin's unavailability due to the fact that the requested subpoena had not been served, counsel requested a recess in the trial until Griffin could be subpoenaed and secured as a witness. The State objected to the delay based upon the timing of the request for the subpoena.

In denying the defense's request to delay the trial, the court noted the difference between a continuance (a postponement) and a recess (a temporary adjournment) of a trial or hearing. The court later concluded that an eighteen-day delay of the trial based upon a subpoena that was requested three weeks prior to trial was beyond the scope of a recess. The court further noted that there had been no factual showing that the witness would be available to testify at the conclusion of the delay. However, the court agreed to allow the defense to proffer the substance of Griffin's testimony. Because the matter was being tried by the bench, the judge stepped down and left the courtroom to allow the proffer to be made.

Counsel for the defendant advised that contrary to Charpentier's claim that he forgot his gun in the defendant's vehicle and the defendant never returned it, Griffin would testify that he picked Charpentier up from Cheramie's trailer on the date of the alleged robbery and personally observed Charpentier in possession of the same gun. Griffin would further testify that, when Charpentier attempted to enter Griffin's vehicle while armed with the weapon, Griffin told him not to bring the gun. Charpentier then returned to the trailer and left the gun behind.

We find no abuse of discretion in the trial court's denial of the defendant's request for a recess of the trial. The record reflects that the defendant did not satisfy the requirements of La. Code Crim. P. art. 709. As the State notes in its brief, the materiality of the testimony in question was not established. Griffin's testimony reconnecting Charpentier with the gun does not prove that the defendant was not in possession of the gun and did not use it to rob Duet. Furthermore, the defendant failed to show a probability that the witness would have been available to testify at trial at a later time, if the motion for a recess had been granted. Although defense counsel argued that Griffin was in a rehabilitation program and would soon be released, no evidence was presented to support this assertion. Finally, counsel did not present facts showing due diligence was used

in an effort to procure attendance of the witness, as required by La.Code Crim. P. art. 709(3).  As the trial court noted, the subpoena was not requested until approximately three weeks before the trial was scheduled to commence.  Also, as the State notes, despite being aware of Griffin's presence at the rehabilitation center, the defense made no effort to have Griffin served there.  Thus, we find that the defendant has failed to meet the criteria of La.Code Crim. P. art. 709.  The trial court did not abuse its discretion in denying the motion to recess the trial.  This assignment of error is without merit.[17]

The Louisiana Supreme Court then likewise denied relief without assigning additional reasons.[18]

For the following reasons, it is clear that the foregoing decision rejecting this claim was neither contrary to nor an unreasonable application of clearly established federal law.

As the United States Fifth Circuit Court of Appeals has explained:

A motion for continuance is addressed to the sound discretion of the trial court and will not be disturbed on a direct appeal unless there is a showing that there has been an abuse of that discretion. United States v. Uptain, 531 F.2d 1281 (5th Cir. 1976); United States v. Gidley, 527 F.2d 1345 (5th Cir. 1976), cert. denied, 429 U.S. 841, 97 S.Ct. 116, 50 L.Ed.2d 110 (1977).  When a denial of a continuance forms a basis of a petition for a writ of habeas corpus, not only must there have been an abuse of discretion but it must have been so arbitrary and fundamentally unfair that it violates constitutional principles of due process. See Gandy v. Alabama, 569 F.2d 1318, 1323 (5th Cir. 1978); Shirley v. North Carolina, 528 F.2d 819, 822 (4th Cir. 1975).

The Supreme Court addressed this subject in Ungar v. Sarafite, 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964):

The matter of continuance is traditionally within the discretion of the trial judge, and it is not

---

[17]  Galjour, 2008 WL 4332509, at *2-3; State Rec., Vol. V of XI.

[18]  State ex rel. Galjour v. State, 18 So.3d 90 (La. 2009) (No. 2008-KH-2730); State Rec., Vol. V of XI.

> every denial of a request for more time that violates
> due process even if the party fails to offer evidence or
> is compelled to defend without counsel.
> Contrariwise, a myopic insistence upon
> expeditiousness in the face of a justifiable request for
> delay can render the right to defend with counsel an
> empty formality.  There are no mechanical tests for
> deciding when a denial of a continuance is so
> arbitrary as to violate due process.  The answer must
> be found in the circumstances present in every case,
> particularly in the reasons presented to the trial judge
> at the time the request is denied.  (Citations omitted.)

Hicks v. Wainright, 633 F.2d 1146, 1148-49 (5th Cir. 1981).

This Court simply cannot say that the trial judge abused his discretion in denying a prolonged recess to secure the testimony of Griffin.  Defense counsel, acting with reasonable diligence, could have had Griffin properly served prior to trial but failed to do so.  Further, defense counsel simply alleged, but did not offer any evidence to prove, that Griffin would have been available to testify when the trial resumed after the requested recess.

In any event, *even if* there had been an abuse of discretion, that alone would not warrant *habeas* relief; rather, as noted, a petitioner must also show that the error rendered his trial "fundamentally unfair."  As the United States Fifth Circuit Court of Appeals has explained, "[t]he test applied to determine whether a trial error makes a trial fundamentally unfair is whether there is a reasonable probability that the verdict might have been different had the trial been properly conducted."  Kirkpatrick v. Blackburn, 777 F.2d 272, 278-79 (5th Cir. 1985).  Although Griffin purportedly would have testified that he had seen Charpentier with the gun at some point prior to the alleged robbery, that testimony in no way exculpates petitioner.  As the prosecution argued, and as the state courts found, even if Charpentier possessed the gun at an earlier point, that does not

- 14 -

mean that petitioner did not later have the gun at the time of the robbery and at the time he was arrested.  Accordingly, even if the recess had been granted and Griffin testified in accordance with the proffer, there is simply no reasonable probability that a different verdict would have resulted.

For all of these reasons, petitioner has not shown that the state court's decision denying his claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1). Accordingly, under the stringently deferential standards of review mandated by the AEDPA, this Court should likewise deny the claim.

### B.  Ineffective Assistance of Counsel

In his second and third claims, petitioner argues that he received ineffective assistance of counsel both at trial and on appeal.  The United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel.  A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense.  Strickland v. Washington, 466 U.S. 668, 697 (1984).  A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."  Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.  See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness."  Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at 689.  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690).  A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

The appropriate standard for determining prejudice varies slightly depending on whether a petitioner is challenging the actions of trial or appellate counsel.  In order to prove prejudice with respect to *trial* counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  Crockett, 796 F.2d at 793.  On the other hand, to prove prejudice with respect to a claim that *appellate* counsel was ineffective, a petitioner must show a reasonable probability that he would have prevailed on appeal but for his counsel's deficient

- 16 -

representation.  Briseno v. Cockrell, 274 F.3d 204, 207 (5th Cir. 2001); see also Smith v. Robbins,

528 U.S. 259, 286 (2000).  Therefore, a petitioner must demonstrate a reasonable probability that,

if appellate counsel's performance had not been deficient in the manner claimed, the appellate court

would have vacated or reversed the trial court judgment based on the alleged error.  Briseno, 274

F.3d at 210.

   Here, petitioner claims that his trial counsel was ineffective for failing to adequately

investigate the case and to call several additional witnesses.  In support of that claim, he attached

the following documents to his post-conviction application:

   1.  A notarized statement from Dodie Bourg dated April 14, 2009.  In that

     statement, Bourg stated that she was at a trailer the day after the alleged

     robbery, petitioner came to the door, and she saw Duet waiting in the car.

   2.  A notarized statement from Geana Baudoin dated April 14, 2009.  In that

     statement, Baudoin stated that she also saw petitioner and Duet together the

     day after the robbery.  Petitioner told her he needed cocaine to sell to Duet,

     who had "a lot of money to spend."  Baudoin also stated that "Trish" told her

     that Duet spent $1,800 on crack the previous night, and he then sent

     petitioner out to get more crack.  Baudoin heard that Duet collected money

     to do a roofing job but spent the money on drugs instead.  Lastly, Baudoin

     stated that the gun belonged to "Red" and that petitioner did not know it was

     in the trailer.

3.      Two letters sent to petitioner from Trish Austin while she was in jail in September of 2007.  In the first letter, she stated that Duet was not robbed but had instead spent the money on drugs.  In the second letter, she stated that she  would testify on petitioner's behalf and would contact his lawyer.

4.      Telephone records for Geana Baudoin.  Petitioner states that this was the telephone he used and that the records showed that Duet called petitioner several times on February 8, 2006, to obtain drugs.

5.      A notarized affidavit from petitioner.  In his affidavit, petitioner stated that he told his attorney prior to trial that Bourg, Baudoin, and Austin were willing to testify for the defense.  He also told his attorney that Shantell Taylor, a supposed witness to the alleged robbery, gave a statement to the police but never mentioned the robbery.  He also told his counsel that "Lt. Champane" of the Lafourche Parish Drug Task Force could testify that Duet tried to purchase $200 worth of crack from petitioner ten days before the alleged robbery.

In the post-conviction proceedings, the state courts rejected petitioner's claim that his trial counsel was ineffective for failing to adequately investigate the case and present the foregoing evidence and witnesses.  Because an ineffective assistance claim involves a mixed question of law and fact, this Court must defer to the state court decision rejecting the claim unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Moore v. Cockrell,

- 18 -

313 F.3d 880, 881 (5th Cir. 2002).  Moreover, the United States Supreme Court has explained that,

under the AEDPA, federal *habeas corpus* review of ineffective assistance of counsel claims is in fact

*doubly* deferential:

> The pivotal question is whether the state court's application of the <u>Strickland</u> standard was unreasonable.  This is different from asking whether defense counsel's performance fell below <u>Strickland</u>'s standard.  Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a <u>Strickland</u> claim on direct review of a criminal conviction in a United States district court.  Under AEDPA, though, it is a necessary premise that the two questions are different.  For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law.  A state court must be granted a deference and latitude that are not in operation when the case involves review under the <u>Strickland</u> standard itself.
>
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision.  <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004).  And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."  <u>Ibid</u>.  "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court."  <u>Knowles v. Mirzayance</u>, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

<u>Harrington v. Richter</u>, 131 S.Ct. 770, 785-86 (2011) (citation omitted).  The Supreme Court then

explained:

> Surmounting <u>Strickland</u>'s high bar is never an easy task.  An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the <u>Strickland</u> standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve.  Even under *de novo*

- 19 -

review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms,  not whether it deviated from best practices or most common custom.

Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. *The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d).  *When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.*

<u>Id</u>. at 788 (citations omitted; emphasis added).

This Court will candidly acknowledge that it is troubled by petitioner's conviction for armed robbery, in that the evidence on that conviction was hardly overwhelming.  The Court will also acknowledge that it is further troubled by the fact that the state courts rejected petitioner's ineffective assistance claim in a rather cursory manner and without an evidentiary hearing.  That said, it is nevertheless clear that the AEDPA's deferential standards are not dependent on whether the state courts carefully assigned their reasons for denying relief or conducted an evidentiary hearing. <u>See, e.g.</u>, <u>Richter</u>, 131 S.Ct. at 784 ("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.  And as this Court has observed, a state court need not cite or even be aware of our cases under § 2254(d).  Where a state court's decision is

unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." (citations omitted)); <u>Charles v. Stephens</u>, 736 F.3d 380, 387-88 (5th Cir. 2013) (explaining that, under the AEDPA, federal courts are to look only to the ultimate determination of the state courts, not their reasoning); <u>Bass v. Dretke</u>, 82 Fed. App'x 351, 354-55 (5th Cir. 2003) ("Simply put, deference is not dependent upon the existence of a full and fair hearing in the state habeas proceeding."); <u>Valdez v. Cockrell</u>, 274 F.3d 941, 946 (5th Cir. 2002) ("[A] full and fair hearing is not a prerequisite to the operation of AEDPA's deferential scheme."). Therefore, this Court's role is limited to reviewing the evidence that was considered by the state courts and, based on that review, determining whether the denial of relief was "unreasonable."

Here, the evidence offered by petitioner in support of his claim was hardly conclusive evidence of ineffective assistance. For example, other than the self-serving allegations in his own affidavit, petitioner has presented no evidence whatsoever that defense counsel was ever actually made aware (or had any reason to be aware) that Bourg, Baudoin, or Austin had information that might have been helpful to the defense. Moreover, the credibility of Baudoin and Austin was suspect at best – Baudoin admitted in her statement that she was involved in drug distribution, while Austin was actually in jail when she wrote her letters. As to the Baudoin's telephone records, they prove nothing of consequence. *Even if* Duet called petitioner on a prior occasion to arrange to purchase drugs, that does not mean that petitioner did not later rob Duet. Concerning Shantell Taylor, there is no reason to believe that defense counsel could have successfully subpoenaed her to testify; the prosecutor stated at trial that he had tried to locate her several times and "her location

is unknown."[19]  Lastly, petitioner offered no affidavit from "Lt. Champane," and there is simply no evidence that he would in fact have testified as petitioner alleges.  Faced with those realities, this Court, despite its reservations, simply cannot say that the state courts' decision to deny relief on this claim was "unreasonable."

Petitioner's final claim is that his appellate counsel was ineffective for failing to raise unspecified claims on appeal.  The state courts likewise denied that claim in the post-conviction proceedings.  For the following reasons, that denial also was not "unreasonable."

As an initial matter, it must be remembered that appellate counsel "is not obligated to urge on appeal every nonfrivolous issue that might be raised (not even those requested by defendant)."  West v. Johnson, 92 F.3d 1385, 1396 (5th Cir. 1996).  On the contrary, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."  Jones v. Barnes, 463 U.S. 745, 751-52 (1983).  Far from evidencing ineffectiveness, an appellate counsel's restraint often benefits his client because "a brief that raises every colorable issue runs the risk of burying good arguments ... in a verbal mound made up of strong and weak contentions."  Id. at 753.  Rather, to prevail with respect to such a claim, petitioner must establish that the ignored issues were "clearly stronger" than the issues actually presented on appeal.  See, e.g., Diaz v. Quarterman, 228 Fed. App'x 417, 427 (5th Cir. 2007); see also Smith v. Robbins, 528 U.S. 259, 288 (2000).

---

[19]  State Rec., Vol. III of XI, transcript of November 29, 2006, p. 10.

In the instant case, appellate counsel asserted only one claim on direct appeal, i.e. that the trial court erred by refusing to grant a recess to obtain the testimony of Craig Griffin. That claim, which was previously addressed in detail in this opinion, was not a strong one. Nevertheless, petitioner did not identify any additional claims that should have been brought, much less show that those claims, whatever they may have been, were any stronger. Therefore, he obviously did not make the showing necessary to prevail on his claim that his appellate counsel was ineffective.

In summary, petitioner has not demonstrated that the state court decision rejecting his ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, utilizing the AEDPA's doubly deferential standards of review applicable to such claims, this Court should likewise deny relief.

## **RECOMMENDATION**

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Gavin Galjour be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from

- 23 -

a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415,

1430 (5th Cir. 1996) (en banc).[20]

New Orleans, Louisiana, this twenty-fourth day of February, 2014.

SALLY SHUSHAN
UNITED STATES MAGISTRATE JUDGE

---

[20] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.